601 P.2d 284

**Henry CHERNOV and Minnie Chernov, his wife, Appellants,**

v.

**ST. LUKE'S HOSPITAL MEDICAL CENTER, an Arizona Corporation, Appellee.**

**No. 14449.**

Supreme Court of Arizona, In Banc.

Sept. 27, 1979.

Leibsohn, Eaton, Gooding & Romley by Jeffrey M. Proper, Marilyn A. Pollard, Phoenix, for appellants.

Burch, Cracchiolo, Levie, Guyer & Weyl by Michael E. Bradford, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is an appeal by Henry Chernov from a summary judgment entered in favor of St. Luke's Hospital Medical Center on his complaint charging that it negligently maintained its parking lot. We accepted jurisdiction pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S. Reversed.

On May 12, 1975, Chernov drove to St. Luke's Hospital to visit his wife, who was a patient there. He entered the hospital grounds traveling in a southerly direction and approached a "T" intersection in its parking lot. Chernov was traveling up the shaft of the "T", while a woman, Mary Arena, was driving a motor vehicle across the top of the "T" from right to left. He came to a stop in response to a traffic control signal "STOP" painted on the roadway in the lane and direction he was traveling. At approximately the same time, Mary Arena approached the intersection from the west. Chernov entered the inter-section, turning left, when his vehicle was struck by the vehicle driven by Mary Arena.

Appellant in his suit alleged that:

" * * * St. Luke's Hospital Medical Center negligently maintained the parking lot in such a manner that the traffic control devices were not sufficiently visible to * * * Arena and as a result thereof, the * * * collision occurred."

The Superior Court granted the hospital's motion for summary judgment and this appeal followed.

We have said before that negligence cases can rarely be disposed of by summary judgment, *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967), because:

"In order for the entry of summary judgment to be appropriate there must be no genuine dispute as to any material fact and only one inference can be drawn from the undisputed material facts, and based on the undisputed material facts the moving party is entitled to judgment as a matter of law." *Lundy v. Prescott Valley, Inc.,* 110 Ariz. 362, 364, 519 P.2d 61, 63 (1974).

Here, an inference can be drawn favorable to Chernov.

The parties agree that Chernov was a business invitee. But the hospital argues that its duty to invitees using its parking lot is set forth in § 343 of the Restatement (Second) of Torts, and that it is subject to liability for a condition on the land only if it "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and should expect that they will not discover or realize the danger * * *." It urges that since the intersection was unobstructed and obvious, either the negligence of appellant or Mrs. Arena was the cause of the accident, and, hence, appellant cannot recover from the hospital as a matter of law.

However, the hospital's duty to Chernov is not governed by § 343, but, rather, is as set forth in § 344 of the Restatement (Second) of Torts. Section 344 provides:

"A possessor of land who holds it open to the public for entry for his business purpose is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons * * *, and by the failure of the possessor to exercise reasonable care to

*     *     *     *     *     *

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

The Court of Appeals for the District of Columbia, citing § 344, said this concerning those in control of parking lots:

"A parking lot operator, like other possessors of business premises, though not an insurer of the safety of his customers, does owe them a duty of reasonable care. Liability for injuries may be predicated upon a breach of this duty in regard either to his own activities or those of a third person on the premises. For the operator's obligation is to exercise prudent care, not only in his own pursuits but also to identify and safeguard against whatever hazardous acts of others are likely to occur thereon. Appellants, as business customers of appellee's parking lot, were indisputably entitled to a full measure of that protection." *Becker v. Colonial Parking, Inc.,* 133 U.S.App.D.C. 213, 217–218, 409 F.2d 1130, 1133–34 (D.C. Cir. 1969) (footnotes omitted).

In answering interrogatories, the hospital acknowledged that it undertook measures to control traffic within its driveway and parking areas. It was therefore incumbent upon the hospital to exercise reasonable care in the maintenance of traffic control devices so that its invitees would not be confused or misled.

Chernov testified by deposition:

"Q. From the time that you saw her enter 18th, off of 18th onto the 18th Street drive . . . until the accident actually occurred, did you ever see her again between those two moments?

A. No.

Q. Then you cannot say really, can you, Mr. Chernov, that she didn't stop, can you?

A. Oh, yes, I can.

Q. How can you say that if you didn't see her?

A. Because when I pulled myself off the floor and sat on the seat, I said, why didn't you stop?

She said, I'm not supposed to stop, there's no stop sign.

Q. I see.

A. I said, you better take a good look. And she took a look and she said, oh, my gosh. And that was it."

When Mrs. Arena was deposed, she testified:

"At the time of the accident—after the accident occurred, when Mr. Chernov made the comment, 'Where did you stop for the stop sign?' I said, 'What stop sign?' He said, 'Well, look at it,' and I did look at it; there was one letter, a "P" visible, and there were no—a faded remnant of patches, slight patches of paint, perhaps where the "ST" and "O" might have been, but the only discernable and definable letter in front of the crosswalk was the "P"; it was somewhat faded."

In viewing the evidence in a light most favorable to the party opposing the motion for summary judgment, see *Boyle v. City of Phoenix,* 115 Ariz. 106, 563 P.2d 905 (1977), it is clear that St. Luke's Hospital was not entitled to judgment as a matter of law. The uncontroverted facts show that Chernov proceeded into the intersection believing Mrs. Arena would stop. But Mrs. Arena was not aware that there was a traffic control signal painted on the roadway because of its faded condition and by reason thereof ran into Chernov. A jury, upon consideration of this evidence, could conclude that the hospital negligently failed to properly maintain the traffic control signals which it had placed in the parking lot, and that such was a proximate cause of the accident.

Reversed and remanded for proceedings consistent with this opinion.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.