(828 P.2d 941)
No. 66,742

BRIGITTE JACKSON, *Appellant* v. K-MART CORPORATION, *Appellee.*

Opinion filed March 27, 1992.

*Henry O. Boaten*, of Law Offices of Henry O. Boaten, of Topeka, for the appellant.

*Barry E. Warren*, and *Bradley S. Russell*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for the appellee.

Before DAVIS, P.J., PIERRON, J., and R. DAVID LAMAR, District Judge, assigned.

DAVIS, J.: Brigitte Jackson appeals from an order granting K-Mart Corporation summary judgment in this slip-and-fall tort action. She contends that the court erred in holding she was required to prove K-Mart had actual or constructive notice of a dangerous condition on the premises. We reverse and remand for trial.

Brigitte Jackson entered the K-Mart department store located in Manhattan, Kansas, as a business invitee for the purpose of shopping for children's clothing. While walking down an aisle in the children's clothing department, she slipped and fell near a round clothing rack. In the middle of the tile floor near the rack, there was an accumulation of a green liquid substance that was apparently avocado juice.

Jackson did not see the spilled juice, did not know how it got there, and did not know how long it had been there. After her fall, an unidentified K-Mart employee found a partially full can of avocado juice near the spill and told Jackson that she apparently had slipped on the substance. Later, Jackson overheard an unidentified K-Mart customer say a woman had passed through the children's clothing department accompanied by a small child who

was carrying a can of avocado juice. The customer surmised the child disposed of the can by placing it on the floor underneath the clothing rack.

K-Mart operates an in-store cafeteria and allows cafeteria patrons to remove food and drink from the cafeteria area and consume it on the shopping floor. Jackson testified that K-Mart sells small cans of avocado juice in the cafeteria.

On cross-motions for summary judgment, the parties agreed and the court found that no material issues of disputed fact precluded summary judgment on the issue of liability. The trial court found that, based on the undisputed facts, the spilled liquid on the defendant's floor was not clearly traceable to K-Mart's actions; therefore, plaintiff was required to prove actual, constructive, or inferred knowledge of the spill by K-Mart. Because the undisputed facts did not establish notice, the court held K-Mart was not liable.

Jackson argues that because K-Mart allowed food and drink items from its in-store cafeteria to be carried into other sections of the store, she was not required to prove K-Mart had actual or constructive notice of the spilled juice. The condition existed, she argues, because of K-Mart's mode of operation; the dangerous condition existed because the storekeeper allowed in-store cafeteria patrons to carry food and drink into the shopping floor area. She argues that the condition is therefore traceable to K-Mart and requires no proof of actual or constructive notice.

The often-stated rules regarding summary judgment and appellate review of summary judgment are:

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment." *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

"To oppose a motion for summary judgment, a party must actively come forward with something of evidentiary value to establish a material dispute of fact. It is not for the court to seek out, but for counsel to designate, that which supports a party's position. A party whose lack of diligence frustrates the trial court's ability to determine if factual issues are controverted falls squarely within the sanctions of Supreme Court Rule 141 [1991

Kan. Ct. R. Annot. 117]." *Slaymaker v. Westgate State Bank,* 241 Kan. 525, Syl. ¶ 1, 739 P.2d 444 (1987).

Negligence is ordinarily a jury question, not a question for judicial resolution on a motion for summary judgment. *Mastin v. Kansas Power & Light Co.,* 10 Kan. App. 2d 620, 622, 706 P.2d 476 (1985). Where reasonable persons could reach differing conclusions based on the same evidence, negligence should not be decided as a matter of law. *Chambers v. Skaggs Companies, Inc.,* 11 Kan. App. 2d 684, 689, 732 P.2d 801 (1987).

The facts are not in dispute. The question before us is whether Jackson is required to prove that K-Mart had actual, constructive, or inferred notice of the dangerous condition on the premises. Our review of the trial court's resolution of this question is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

A business proprietor owes its customers a duty to keep the floors of the business in a reasonably safe condition.

"The owner or occupant of premises is liable to an invitee for injuries resulting from failure to exercise reasonable or ordinary care for the invitee's safety. . . . The owner or occupant of premises is charged with the duty of exercising reasonable care to keep the premises in reasonable [*sic*] safe and suitable condition so as to avoid injury to an invitee or of warning an invitee of concealed perils of which the owner or occupant knows or should know by the exercise of reasonable diligence." *Graham v. Loper Electric Co.,* 192 Kan. 558, 561-62, 389 P.2d 750 (1964).

This duty is expressed as follows:

"[T]he obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The [proprietor] must not only use care not to injure the visitor by negligent activities, and warn him of hidden dangers known to the [proprietor], but he must also act reasonably to inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the property." Prosser and Keeton, Law of Torts, § 61, 425-26 (5th ed. 1984).

On the other hand, the proprietor of a store is not an insurer of its customers. *Fisher v. Sears, Roebuck & Co.,* 207 Kan. 493, 497, 485 P.2d 1309 (1971); *Chambers,* 11 Kan. App. 2d at 687. Thus,

"[m]ere proof of a dangerous condition on the property owner's premises does not render the owner liable to the invitee for any accident that may occur therein; the mere fact that an invitee slips and falls on the floor of the inviter's property does not raise an inference of negligence." *Chambers,* 11 Kan. App. 2d at 687.

See *Carter v. Food Center, Inc.,* 207 Kan. 332, 335, 485 P.2d 306 (1971); *Magness v. Sidmans Restaurants, Inc.,* 195 Kan. 30, 33, 402 P.2d 767 (1965).

Kansas courts have stated that the grounds for a proprietor's liability in a slip-and-fall case is the proprietor's superior knowledge over that of its customers to know of any dangerous condition and its failure to warn customers of the potential risk. See *Little v. Butner,* 186 Kan. 75, 80, 348 P.2d 1022 (1960), and cases cited therein.

Traditionally, where the dangerous condition is not created through the active fault of the proprietor or its agents, the plaintiff must prove the proprietor had actual, constructive, or inferred knowledge or notice of the condition to establish liability. *Carter,* 207 Kan. at 335; *Chambers,* 11 Kan. App. 2d at 687. In contrast, where the customer's injury is caused by dangerous conditions negligently created or maintained by the proprietor or its agents, the proprietor is deemed to have actual notice and it is not necessary for the plaintiff to show the proprietor had notice of the condition. *Little,* 186 Kan. at 81; *Elrod v. Walls, Inc.,* 205 Kan. 808, 811, 473 P.2d 12 (1970). Thus, if the dangerous condition is *traceable* to the proprietor's actions, proof of notice is unnecessary. See *Carter,* 207 Kan. at 335; *Knowles v. Klase,* 204 Kan. 156, 157, 460 P.2d 444 (1969). See generally Annot., 85 A.L.R.3d 1000.

There is no evidence in the record to establish that K-Mart knew of the dangerous condition, or that the condition existed for such a period of time that K-Mart should have known about it in the exercise of reasonable care. Yet, there is evidence that the juice on the floor creating the very condition causing Jackson to fall and injure herself is traceable to K-Mart's operation of its cafeteria. By not restricting the carrying of food and drink into the shopping areas of the store, K-Mart fostered the very risk that injured Jackson. While the spill arguably was the immediate result of the actions of a third party, the method K-Mart chose

to operate its store raised a factual question of whether the risk to the customers was foreseeable. It is foreseeable that some customers would discard juice or beverage containers obtained from the cafeteria in other areas of the store and not in receptacles provided for such containers throughout the store. Based on this question of whether there was a foreseeable risk of harm to store customers, Jackson urges this court to adopt the "mode-of-operation" rule applied in other jurisdictions.

The mode-of-operation rule has been described as "the modern trend in slip and fall cases in self-service operations." *Ciminski v. Finn Corp.*, 13 Wash. App. 815, 821, 537 P.2d 850, *rev. denied* 86 Wash. 2d 1002 (1975).

While Kansas courts have not specifically adopted the mode-of-operation rule, they have recognized that certain modes of operation may require a higher degree of care by the proprietor. In *Elrod v. Walls, Inc.*, 205 Kan. 808, the plaintiff slipped and fell on a lettuce leaf and possibly a grape. She could not prove the proprietor had actual notice of the condition, but circumstantial evidence indicated the items had been on the floor for such a period of time the jury could find the proprietor had constructive notice. 205 Kan. at 812-13. In discussing the proprietor's mode of operation, the court stated:

"[W]hen produce is displayed in a self-service market and handled by customers, the storekeeper must take reasonable protective measures for the benefit of customers who might slip on debris dropped on the floor by a customer or employee and fall.

. . . .

"When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor and if the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate.

". . . A small store where customers are few would require little vigilance while a store with heavy traffic in the produce aisles might require almost constant attention.

"Vigilance of a storekeeper in keeping his floor clean must be commensurate with the risk involved." 205 Kan. at 811-12.

While *Elrod* speaks in terms of mode of operation, the court stopped short of adopting the mode-of-operation rule and instead

concluded the evidence was sufficient to prove constructive knowledge by the proprietor. 205 Kan. at 813.

The Kansas case most consistent with recognizing a theory of liability based on the proprietor's mode of operation is *Little,* where the plaintiff slipped on a meat sample. The defendant, Butner, entered into an agreement with Rath Packing Company which allowed Rath to demonstrate its meat products by handing them out to Butner's grocery customers. Little alleged defendant and Rath were negligent in failing to take precautions to prevent customers from dropping meat on the floor, failing to provide adequate disposal methods of samples given to children, and failing to keep the floor clean in the area around the demonstration. Little appealed from the trial court's decision sustaining demurrers to the petition because she could not prove the defendant had actual or constructive notice. The Supreme Court reversed, holding proof of notice was unnecessary because the dangerous condition was brought about, at least in part, by the defendants' own actions. 186 Kan. at 82

"The dangerous condition here alleged was created and negligently maintained by the defendants in agreeing to, and carrying on, the demonstration in a manner which they knew, or with the exercise of reasonable care should have known, would render the premises unsafe. Where meat samples are handed out by a demonstrator to customers in a large super market as a means of acquainting the public with the product, it is not unreasonable to assume that parts of such samples will be dropped to the floor and stepped upon by customers and patrons making the floor slick, slippery and dangerous to walk upon. Due care, under such circumstances, would seem to dictate that receptacles or other means be provided for their disposal and that seasonable cleaning of the floor would be necessary. Negligence is alleged to inhere in the condition created and the fact that meat particles were dropped by customers and children of tender years is immaterial. The over-all condition was created by the defendants in carrying on the demonstration without taking the precaution, it is alleged, of providing suitable means for disposing of the samples and of cleaning the floor at seasonable intervals. Under such circumstances, the defendants breached their duty to the plaintiff in failing to warn her of the dangerous condition created. Whether the defendants should have reasonably anticipated that the handing out of meat samples to customers and children in the store would result in meat particles being dropped, making the floor slick, slippery and dangerous for the use of plaintiff and other customers, seems clearly to present a question for a jury." 186 Kan. at 82.

The mode-of-operation rule generally allows a plaintiff to recover without showing the proprietor's actual or constructive knowledge of the condition if the plaintiff shows the proprietor adopted a mode of operation where a patron's carelessness should be anticipated and the proprietor fails to use reasonable measures commensurate with the risk involved to discover the condition and remove it. See *Tom v. S. S. Kresge Co., Inc.*, 130 Ariz. 30, 32-33, 633 P.2d 439 (Ariz. App. 1981); *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 429, 221 A.2d 513 (1966); *Lingerfelt v. Winn-Dixie Texas, Inc.*, 645 P.2d 485, 488 (Okla. 1982); *Ciminski v. Finn Corp.*, 13 Wash. App. at 820-21.

An extensive discussion of the rule appears in *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 733 P.2d 283 (1987), which merits extended quotation.

'[U]nder traditional negligence jurisprudence, a storeowner's liability can not be premised simply upon a plaintiff's proof that a storeowner had notice that a dangerous condition was a possibility.

"The notice requirement adds to the substantial hurdles faced by plaintiffs injured by transitory hazardous conditions in a store. [Citations omitted]. A person injured in a supermarket fall will rarely be able to trace the origins of the accident. . . .

### "THE MODE-OF-OPERATION RULE

"Courts in Arizona and in other jurisdictions have mitigated this seeming inequity by developing the 'mode-of-operation' rule. The 'mode-of-operation' rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise. [Citations omitted.] In other words, a third person's independent negligence is no longer the source of liability, and the plaintiff is freed from the burden of discovering and proving a third person's actions. A plaintiff's proof of a particular mode-of-operation simply substitutes for the traditional elements of a *prima facie* case—the existence of a dangerous condition and notice of a dangerous condition. This is neither a new nor radical principle. We have recognized, in other contexts, a businessman's duty to anticipate the hazardous acts of others likely to occur on his property, *e.g.*, *Chernov v. St. Luke's Hospital Medical Center*, 123 Ariz. 521, 522-23, 601 P.2d 284, 285-86 (1979) (hospital not entitled to summary judgment when plaintiff alleged that accident in hospital parking lot was produced by hospital's improper maintenance of traffic control signals); *see also* Restatement (Second) of Torts § 344 ('A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a

purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . , and by the failure of the possessor to exercise reasonable care to [protect the public]')." *Chiara*, 152 Ariz. at 400.

*Chiara* reiterates that the rule only applies in cases where the proprietor can *reasonably* anticipate hazardous conditions will regularly arise, otherwise "the rule would engulf the remainder of negligence law." 152 Ariz. at 400-01. In *Chiara*, the plaintiff slipped on some creme rinse which had been spilled on the floor of a self-service grocery store. Finding a jury question existed as to whether the proprietor could reasonably anticipate that sealed bottles of creme rinse were regularly opened and spilled, the court vacated the trial court's order granting the defendant summary judgment. 152 Ariz. at 401.

In this case, K-Mart argues that adoption of the mode-of-operation rule would make proprietors strictly liable for a customer's injuries when the customer slips and falls on a substance sold by the proprietor. We disagree. Proprietors would only be liable in a mode-of-operation case if they adopted a mode of operation which made recurring dangerous conditions reasonably foreseeable and failed to exercise reasonable care under the circumstances. See *Chiara*, 152 Ariz. at 401.

We are convinced that the mode-of-operation rule is a natural extension of *Little* and *Elrod*. Here, as in those cases, the plaintiff alleges that the proprietor engaged in conduct which contributed to the slippery condition on the floor, and it knew or should have known that its own conduct could lead to the dangerous condition. The theory of negligence asserted in each of these cases is slightly different than that alleged in the normal slip-and-fall case. Jackson's argument focuses on the proprietor's act of contributing to the condition and failing to take reasonable precautions to prevent accidents (such as preventing removal of food and drink from the store's cafeteria and failing to clean the floor at necessary intervals), rather than alleging that the proprietor knew or should have known of the dangerous condition and failed to do anything about it.

Our research has disclosed a case that is virtually identical to the case at bar. In *Tom v. S. S. Kresge Co., Inc.*, 130 Ariz. 30, the plaintiff slipped and fell on a clear liquid substance in the

defendant's department store. There was no direct evidence of how the liquid got on the floor, but an employee of the defendant surmised it was probably from a spilled soft drink. Kresge operated two counters in its store which sold soft drinks which patrons could carry around in the store while they shopped. 130 Ariz. at 31, 33. The plaintiff alleged Kresge was liable because: (1) of its mode of operation, (2) the condition existed for such a period of time Kresge had constructive notice, and/or (3) there was enough evidence of other careless general business practices that the jury could infer negligence despite plaintiff's inability to show Kresge had notice. The trial court granted Kresge's motion for summary judgment on the basis that plaintiff could not prove notice.

The Arizona Court of Appeals reversed, ruling the facts warranted application of the mode-of-operation rule where the proprietor sells soft drinks and allows its patrons to carry the drinks around in the store. The court indicated the rule was applicable due to Kresge's reasonable anticipation of the carelessness of its patrons under the circumstances. 130 Ariz. at 32, 33. The court also ruled that summary judgment was improper on the constructive notice theory because the record contained circumstantial evidence from which a jury could infer the spill had been on Kresge's floor for some period of time. Accordingly, the court reversed and remanded the case for trial. 130 Ariz. at 33.

We find the rationale of *Tom* and the other mode-of-operation cases persuasive. Under this rule there remains a factual question: Whether K-Mart's mode of operation made a recurring dangerous condition reasonably foreseeable and, if so, whether it failed to exercise reasonable care under the circumstances. Summary judgment was therefore inappropriate.

Reversed and remanded for trial.

PIERRON, J., dissenting: I respectfully dissent. The "mode-of-operation" rule earnestly suggested by the majority is a clear departure from previous case law of this State.

"[We] have often stated the duty of a proprietor toward a business invitee. He is not an insurer of the safety of his business invitee and the mere fact the latter slips and falls upon foreign material present on the floor of a retail

establishment does not raise an inference of negligence (*Relahan v. F. W. Woolworth Co.*, 145 Kan. 884, 67 P.2d 538).

"In *Knowles v. Klase*, 204 Kan. 156, 460 P.2d 444, we iterated these guidelines:

'A proprietor must use ordinary care to keep those portions of the premises which can be expected to be used by business invitees in a reasonably safe condition. If an unsafe condition is created by the proprietor or those for whom he is responsible, or if it is traceable to their actions, proof of notice of the condition is unnecessary. When a dangerous condition is neither created by the proprietor or those for whom he is responsible, nor traceable to their actions, proof of negligence with respect to a floor condition requires some showing they had actual or constructive notice of the dangerous condition. A proprietor may be charged with constructive notice of the condition if the condition existed for such length of time that the proprietor, his agents or employees should have known of it in the exercise of ordinary care.' (p. 157.)

"Our recent case of *Elrod v. Walls, Inc.*, 205 Kan. 808, 473 P.2d 12, involved a slip and fall in a supermarket. Plaintiff there fell on a lettuce leaf in a produce aisle in which other debris was observable. The condition of the lettuce leaf was variously described in such a manner as to indicate the length of time it had been on the floor. In affirming recovery for the plaintiff we emphasized the duty of a proprietor engaged in a particular type of selling thus:

'When greens are sold from open bins on a self-service basis, there is the likelihood that some will fall or be dropped to the floor and if the operator chooses to sell in this way, he must do what is reasonably necessary to protect the customer from the risk of injury that mode of operation is likely to generate.

'Vigilance of a storekeeper in keeping his floor clean must be commensurate with the risk involved.' (Syl. ¶ ¶ 4, 5.)" *Carter v. Food Center, Inc.*, 207 Kan. 332, 335-36, 485 P.2d 306 (1971).

In other words, to prove fault in a classic "slip and fall" case occasioned by something having been dropped on the floor of a business, the plaintiff must establish it was there due to the negligence of the defendant; it had been there for such a time that constructive notice is presumed; or there had been actual notice to the defendant of its presence.

The reason for the rule is obvious. Negligence for such occurrences is not presumed. Due to the kinds of merchandise available and the size and normal operating procedures of many mercantile establishments, it is not reasonable to demand and expect completely litter-free floors at all times. Actual negligence

by the defendant in either dropping it or failing to pick it up must be shown.

Although the majority presents a reasoned argument for what I would argue is an expansion of tort liability in this state, such change, if it is to be made, must come from the legislature or our Supreme Court.

The distinction suggested as a basis for this decision—that the failure to keep avocado juice drinkers confined to one part of the store created an unusually dangerous condition—is one without a difference. The real issue is still whether the defendant had active or constructive notice of the litter. This is true whether the plaintiff slips on avocado juice, a grape, or a lettuce leaf.

Adoption of this "mode-of-operation" rule would effectively overrule the bright line approach we have long followed as set out in *Carter* and numerous other cases for determining negligence in cases of this sort.

The *Little* case does offer some support for the majority position. A close reading of *Little*, however, reveals a fact situation where an independent business operating in the store caused an unusual risk. In any event, the approach suggested by *Little*, which may be an aberration from Kansas law before and since, has generated no progeny in the last 30 years and should be restricted to its peculiar facts.

I would affirm the judgment of the able trial judge.